**H. DAROFF & SONS, Inc. v.
UNITED STATES.**

Civ. A. No. 7947.

United States District Court
E. D. Pennsylvania.

March 2, 1951.

Max H. Walls, Philadelphia, Pa., for the plaintiff.

Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for the defendant.

CLARY, District Judge.

Plaintiff herein, H. Daroff & Sons, Inc., made original claim against the United States for $6,069.40, withheld by the Government as charges for excess material under a contract for the manufacture of 7,000 Uniforms for the Armed Services. The original basis for its claim was that the cloth furnished by the Government had shrunk excessively and for that reason it should not have been charged for the excess material needed to complete the contract because of such excessive shrinkage. At the trial plaintiff voluntarily withdrew its entire claim on this theory and substituted instead a claim for an amount representing the difference between the price paid by the Government for 630% yards of cloth, plus an agreed 10% packing, handling, etc. charge and a unit price fixed by the contract for such cloth. It alleged that the unit price charged by the contract was unreasonable and excessive and in the nature of a penalty.

From the pleadings and proof I make the following

### Findings of Fact

1. On 1 December 1942, plaintiff and defendant entered into Contract No. W 669 qm–23763, for the manufacture and delivery of 7,000 Uniforms, at $15.86 each, or a total consideration of $111,020.00.

2. Defendant agreed to furnish the basic cloth for the garments, the contract containing the following pertinent provision:

"*Excess Materials.* Should contractor require cloth in excess of the quantities provided by the allowances stated herein, for the purpose of completing his contract,

it will be furnished by the Government, f. o. b. the quartermaster depot or installation designated by the government and charged to his account at the unit prices stated below, except that for the portion of the excess cloth in irreparable rejects and/or cut parts and all other materials and findings furnished in excess of the quantities provided by the allowances stated herein, the Government will supply the same to him, f. o. b. the quartermaster depot or installation designated by the government, and will charge his account with the value thereof at the prevailing government prices, plus 10% to cover the cost of packing, handling, etc.

| Cloth | Unit | Unit Price |
|---|---|---|
| Cloth, Wool, Elastique, OD Dark, 18 Oz. Yard | | $5.81" |

3. Plaintiff fabricated 6,970 acceptable garments for which the contract allowance was 24,889⅛ yards. Excess cloth used above contract allowances was 1,214⅛ yards, and for this material the Government charged the plaintiff, as follows:

| | |
|---|---|
| 630⅝ yards @ $5.81 (fixed contract price) | $3,664.66 |
| 583⅝ yards @ $3.7445 (purchase price) | 2,184.45 |
| Plus 10% for handling, etc. | 218.44 |
| 1,214⅛ yards Total charge for excess cloth | $6,067.55 |
| (An additional charged for excess buttons used, plus 10% was made against the plaintiff, but no claim for refund is involved) | 1.85 |
| Total deduction (original claim) | $6,069.40 |

4. The amount in suit is alleged by the plaintiff to be an unenforceable "penalty", representing the difference between the fixed contract price and the purchase price for the 630⅝ yards of cloth:

| | |
|---|---|
| 630⅝ yards X $5.81 | $3,664.66 |
| 630⅝ yards X $3.7445 plus 10% | 2,598.02 |
| Difference | $1,066.64 |

5. The "prevailing price" for the cloth was established by averaging out the prices paid for the material purchased by the defendant from mills under a current directive. The "fixed contract price" stipulated in the contract was reached by multiplying the average purchase price under a then current directive by one-and-a-half. The average purchase price varied somewhat under directives, so that the unit price of $5.81 is not related to the purchase price of $3.7445.

6. Administrative or overhead charges were not reflected in the "prevailing price." The actual cost to the defendant of the subject cloth was not $3.7445, but that figure, plus expenses incurred in the purchase of the cloth, such as clerical and other costs of procurement, including preparation of the cloth specifications, servicing of contracts with the mills, inspection, testing of samples, transportation, storage and handling. No evidence bearing upon actual cost was produced by the plaintiff and such cost in its entirety is impossible to ascertain.

7. Defendant's policy of charging one-and-one-half times its purchase price was also based on additional considerations, (a) to promote efficiency in the cutting of Government material, (b) to prevent negligence in the use of Government property during the war when the Government's supply of material was in a critical state, and (c) for the purpose of halting unlawful conversion of Government cloth to the civilian market during severe wartime shortages.

8. The subject contract was completely performed by the plaintiff and the defendant in accordance with its terms.

9. The contract in suit was entered into voluntarily by both parties after full negotiation as to its content and terms.

10. The necessity for the furnishing of 630⅝ extra yards of material was due entirely to the mistake of the plaintiff in miscalculating the amount needed for completion of the contract.

11. Plaintiff has not met its burden of establishing that the unit price of

$5.81 for such cloth is unreasonable, excessive and in the nature of a penalty.

### Conclusions of Law

1. The Court has jurisdiction of the parties hereto and the subject matter of the suit.

2. The excess material clause set forth in paragraph 2 "Findings of Fact" is not a "damages" provision. That clause does not operate as a result of a breach but is a separable part of the contract looking toward its performance carrying mutual obligations, to wit, the right of the contractor to request additional material at a stipulated price, and the obligation of the Government to furnish such material in pursuance of contractor's request.

3. There has been no breach of the contract by either party which would call into operation the principle of liquidated damages operating as a penalty.

4. The Court will not interfere with the execution of the terms of a contract voluntarily entered into without a showing of overreaching on the part of one of the contracting parties.

5. Under the law and the evidence, the finding is in favor of the defendant, United States.